# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PEARLENE DRAKE,

      *Plaintiff*,

CASE NO. 14-12686

DISTRICT JUDGE BERNARD A. FRIEDMAN

*v.*                    MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

Plaintiff Pearlene Drake brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). Drake, now appearing *pro se*, has failed to comply with the Court's orders. For the reasons set forth below, the Court **RECOMMENDS** that Drake's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), and because the ALJ's decision was supported by substantial evidence.

## II.    REPORT

### A.    Background and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner denying Drake's claims under the

Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401-34 and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381–85. (Doc. 2; Tr. 1-3).

This case is one of a series of Social Security benefits actions initiated by the law firm Davidson, Breen, Doud, Steele & Ferguson, P.C. ("the Doud Firm"), and nominally filed by attorney Richard J. Doud. Courts in this district regularly found Doud's briefs to be deficient; upon investigation, it was revealed that Doud was no longer in practice, and that persons the Doud Firm were filing in his name. On April 13, 2015, Drake moved to substitute Doud with attorney James Smith, also of the Doud Firm. (Doc. 18).On May 20, 2015, a global stay of all Social Security cases in which Doud was listed as counsel was entered by Chief Judge Gerald Rosen pursuant to Administrative Order 15-AO-033; this stay was affirmed by a three judge panel on June 9, 2015. (Doc. 23). On October 19, 2015, a text-only order released cases covered by the stay back to the magistrate and district judges originally assigned; on October 23, 2015, District Judge Friedman lifted the stay. (Doc. 24).

The Doud Firm having been removed from all pending Social Security cases, Drake was left with the option of representing herself *pro se*, or obtaining new legal counsel. Drake was specifically informed of this option by letter, sent pursuant to a stipulation between the Doud Firm and the United States District Court for Eastern District of Michigan, and that she had until December 30, 2015, to obtain new counsel. (Doc. 26). On January 5, 2016, the undersigned magistrate found that Drake had not

obtained new counsel, and was thus deemed to be proceeding *pro se*. (Doc. 25). Drake was further informed that "the parties shall each be given an additional 30 days to file any necessary supplemental briefings," and that Drake's "supplemental brief shall be filed on or before February 4, 2016." (*Id.*).

On February 17, 2016, the undersigned magistrate found that Drake failed to submit a brief or motion for summary judgment by February 4, 2016, and had thus failed to comply with the Court's order. (Docs. 25, 27). The Court ordered Drake to show cause in writing on or before March 2, 2016, why her case should not be recommended for dismissal for want of prosecution. (Doc. 27). On March 2, 2016, Drake filed a response, her first appearance on the docket since April 2015. (Doc. 28). In that document, Drake asserts that her case "should not be dismissed . . . due to the fact that Plaintiff was under the mistaken belief that she was still being represented by attorney Aaron T. Lemmens," one of the attorneys at the Doud Firm. (*Id.*). Drake also asserts that she "has met with several attorneys in an effort to retain counsel to assist her," and that she "was scheduled to meet with an attorney on March 1, 2016" but that her appointment was cancelled due to a snow emergency. (*Id.*). Drake seeks a thirty-day extension to permit her to retain a new attorney. (*Id*)

### B.      Dismissal is Appropriate Pursuant to Fed. R. Civ. P. 41(b)

Federal Rule of Civil Procedure 41(b) grants federal courts the authority to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order of the court . . . ."  Fed R. Civ. P. 41(b).  "This measure is available to the district court as

3

a tool to effect 'management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties.'" *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984)). "Not only may a district court dismiss for want of prosecution upon motion of a defendant, but it may also *sua sponte* dismiss an action whenever necessary to 'achieve the orderly and expeditious disposition of cases.'"  *Anthony v. Marion Co. Gen. Hosp.*, 617 F.2d 1164, 1167 (5th Cir. 1980) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 631 (1962)).

The Sixth Circuit is guided by four factors in determining whether a case should be dismissed for want of prosecution pursuant to Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Saulsberry v. Holloway*, 622 F. App'x 542, 545 (6th Cir. 2015) (quotation omitted). Applying these factors, the Court finds that dismissal pursuant to Rule 41(b) is appropriate. The Court's February 17, 2016, order specifically informed Drake that failure to comply could lead to dismissal. (Doc. 27). Drake now asserts that she was under the mistaken impression that she was still represented by attorney Aaron Lemmens of the Doud Firm, though she does not clarify when or how she recognized her error. (Doc. 28).

4

Drake had ample notice that the Doud Firm was being terminated, along with any attorneys who practiced there, as her attorneys in this case. Drake was specifically informed by letter, sent on or before October 20, 2015, that the Doud Firm could no longer represent her, and that she had sixty days from the date of the letter to retain a new attorney. (Doc. 26). The agreement also provided that the Doud Firm would send a client's files directly to the client if it was not contacted by new counsel by December 30, 2015. (*Id*. at 1). Because Drake did not obtain alternate counsel, she should have received a full copy of her file by the end of 2015, which acted as a second notice that the Doud Firm could no longer represent her. Drake received a third notice that the Doud Firm was no longer representing her on January 5, 2016, when the undersigned magistrate deemed her to be proceeding *pro se*. (Doc. 25). Drake then received a fourth notice on February 17, 2016, when the undersigned ordered her to show cause why her case should not be dismissed for failure to comply with the Court's briefing schedule. (Doc. 27). Drake does not assert that she did not receive these prior notices, and she clearly received the Court's February 17, 2016, order to show cause given her response thereto. (Docs. 27, 28). The Court cannot credit Drake's assertion that she believed, despite at least four notices to the contrary sent over the course of some four months, that she was still represented by the Doud Firm or attorneys within that firm.

As discussed above, Drake's failure to respond to the Court's orders appears willful, and her March 2, 2016, assertion that she believed that she was still represented by attorneys within the Doud Firm is not credible. (Doc. 25). Drake was therefore warned

5

that her failure to comply with the Court's orders could lead to dismissal, and her failure to comply with those orders appears willful; factors one and three favor dismissal. There is no indication that the Commissioner has been prejudiced by Drake's delays, thus factor two does not weigh in favor of dismissal. Factor four supports dismissal; Drake failed to respond to the Court's orders until the eleventh hour, and her plea for additional time as the result of a mistaken belief that she was still represented by the Doud Firm is belied by the numerous notices she received to the contrary. Where a *pro se* petitioner repeatedly fails to comply with a Court's orders, dismissal is proper. *See Cook v. MDOC-Muskegon Corr. Facility*, No. 14-12314, 2015 WL 668744, at *3 (E.D. Mich. Feb. 17, 2015); *Morley v. Comm'r of Soc. Sec.*, No. 12-14653, 2013 WL 2051326, at *1 (E.D. Mich. May 14, 2013) (Holding that where a *pro se* petitioner "effectively abandon[s] the case . . . dismissal is the only appropriate remedy available.").

### C.   The ALJ's Decision Was Supported by Substantial Evidence

Additionally, the Court finds that the ALJ's decision is supported by substantial evidence. The Court has thoroughly reviewed the record and found no evidence of error requiring remand. Drake's complaint does not set forth any specific error allegedly perpetrated by the ALJ, and instead states that "the only substantial issue in dispute . . . is whether the claimant was and still is under a disability prior to January 13, 2011." (Doc. 1 at 2). This broad assertion provides no reason to believe that the ALJ's decision was not supported by substantial evidence, but instead merely restates the task carried out by the ALJ.

6

Regarding mental health, the ALJ noted that Drake received mental health treatment only four times, that Drake did not allege that she was disabled by any mental issues at the hearing, and that she generally got along well with her family. (Tr. 18). The ALJ found Drake suffered only mild limitations to her activities of daily living, social functioning, and concentration, persistence, or pace. (Tr. 19). Drake was able to care for her son most of the time, needed little help with personal care activities, visited with family members, and was able to manage her finances, watch television, and follow non-labor-related instructions without difficulty. (*Id.*). The ALJ further found no evidence of episodes of decompensation. (*Id.*). Consequently, the ALJ found that Drake's mental impairments were non-severe. (*Id.*).

The ALJ found that Drake suffered from the severe physical impairments of degenerative disk disease of the lumbar and cervical spine, and degenerative joint disease of the left shoulder. (Tr. 17). The ALJ considered these ailments in combination, and also considered the impact of her obesity on her overall level of ability. (Tr. 20, 26). The ALJ analyzed each of Drake's medical records in a particularly thorough and persuasive manner. He found that Drake suffered a left rotator cuff injury sometime in 2006, which produced pain upon full abduction and extension of the left shoulder, along with "intermittent exacerbations of pain," but which generally trended towards improvement. (Tr. 21-22). The ALJ discounted the credibility of some of Drake's asserted physical limitations on the basis of her ability to care for her teenage son who suffers from Down's Syndrome, including preparing meals, assisting him with showering, dressing,

7

and driving him around. (Tr. 24). The Court also finds that the ALJ's explanations for the weight given to each of the opinions rendered by Drake's physicians, is thorough and persuasive. (Tr. 25-26).

The ALJ ultimately found that Drake retained the capacity to perform light work, but with no reaching above the shoulder level, and a limitation to only occasionally pushing, pulling, carrying, and lifting with the upper left extremity. (Tr. 20). The ALJ properly consulted with a vocational expert to determine whether Drake's residual functional capacity, age, education, and work experience would permit her to perform jobs which exist in substantial numbers in the national economy. The vocational expert testified that Drake would be able to perform work as a counter clerk (171,000 jobs nationally), transportation attendant (6,000 nationally), or sales attendant (48,000 nationally). (Tr. 27, 53-54). As a result, the ALJ properly found Drake not disabled under the Act. (Tr. 28).

The Court notes the relative dearth of complaints made by Drake to her physicians in between 2008 and 2012 regarding her back and upper left extremity, indicating that her pain in those areas was either tolerable or improved. (*See*, *e.g.*, Tr. 832-68). In September of 2011 Drake was able to perform all basic physical tasks upon examination by the consultative examiner, including bending, stooping, carrying, pushing, pulling, picking up coins, and writing. (Tr. 748). A large portion of Drake's medical records relate to an ankle injury, which did not disable her for twelve months or longer, and which was well-resolved by surgical intervention. (*See*, *e.g.*, Tr. 558-800). Those records which relate to

8

Drake's left shoulder injury generally show that the injury resulted in only "mild degenerative changes of the acromioclavicular joint" as far back as June 2007. (Tr. 189). Dr. Nadeem Siddiqui found in April 2007 that Drake had done well with physical therapy, and was well enough to require only home rehabilitation exercises. (Tr. 202). Drake's back and left arm symptoms seem to have largely cleared up following 2007, and do not appear to have produced disabling symptoms. The Court finds the ALJ's analysis to be a fair representation of the record, and finds that his residual functional capacity assessment adequately compensates for Drake's objectively supported limitations.

The ALJ's decision is thus supported by substantial evidence, and should be affirmed. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (An ALJ's decision which is supported by substantial evidence "must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.") (internal citations omitted).

### D.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Drake's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), and because the ALJ's decision was supported by substantial evidence.

## III.     REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A

party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 10, 2016                          S/ PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.   A copy was also sent via First Class Mail to Pearlene Drake at 2843 Wolcott Street, Flint, MI 48601.

Date: March 10, 2016                             By s/Kristen Krawczyk
                                                Case Manager to Magistrate Judge Morris