UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEARLENE DRAKE,

        Plaintiff,                                   Civil Action No. 14-CV-12686

vs.                                               HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Dkt. 31)**

      In this social security case, Plaintiff Pearlene Drake appeals from the final determination of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 423, 1382. The case was originally assigned to the Honorable Bernard A. Friedman, but was subsequently reassigned to the undersigned. Before the Court is Defendant's motion for summary judgment, which contends that the Commissioner's decision is supported by substantial evidence in the record. For the reasons stated below, the Court grants the motion.

**I. BACKGROUND**

      The procedural background of this case is somewhat complex and merits a brief discussion. In August 2007, Plaintiff filed for disability, claiming an onset date of June 11, 2007. That claim was denied in March 2010, following a hearing before an Administrative Law Judge ("ALJ"), and Plaintiff appealed the denial through the Appeals Council and up to the district court. In March 2012, pursuant to a joint stipulation, Plaintiff's claim was remanded to the Commissioner for further consideration. Prior to the remand, in January 2011, Plaintiff fractured her ankle, and, in a separate disability proceeding, was declared disabled as of January

13, 2011 as a result of that injury. Noting this recent development, the Appeals Council instructed the ALJ in this case to reconsider evidence of Plaintiff's disabilities from June 11, 2007, the alleged onset date, through January 12, 2011, prior to her subsequent date of disability. A hearing was held before a new ALJ, following which the ALJ determined that Plaintiff was not disabled during the relevant period. Plaintiff appealed this second denial.

While Plaintiff's claim was on appeal in the district court, the law firm representing her in the appeal terminated the representation.[1] Plaintiff was informed of this pursuant to a letter sent by the firm, and was given an opportunity to secure new counsel. See Copy of 10/4/2015 Order (Dkt. 26) (Filed Under Seal). Plaintiff failed to timely secure new counsel, and the Magistrate Judge deemed Plaintiff proceeding pro se and established a briefing schedule. See 1/5/2016 Order (Dkt. 25). Plaintiff did not file a motion for summary judgment in accordance with the briefing schedule, and the Magistrate Judge thereafter ordered Plaintiff to show cause why her case should not be dismissed for want of prosecution. 2/17/2016 Order (Dkt. 27). In response, Plaintiff explained that she was unaware she needed to secure new counsel, but was in the process of doing so, and requested a 30-day extension for her new attorney to review the record and file a motion. Resp. to 2/17/2016 Order (Dkt. 28). Subsequently, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that Plaintiff's appeal be dismissed on the grounds that Plaintiff had failed to comply with the Court's orders and because the ALJ's decision was supported by substantial evidence. See 3/10/2016 R&R (Dkt. 29).

Shortly thereafter, Judge Friedman rejected the Magistrate Judge's recommendation and withdrew the order of reference. See 3/14/2016 Order (Dkt. 30). Judge Friedman also granted

---

[1] The unusual circumstances surrounding Plaintiff's social security appeal — caused primarily by an investigation into the law firm representing Plaintiff in the appeal — are explained in more detail in the Magistrate Judge's Report and Recommendation ("R&R"). See 3/10/2016 R&R (Dkt. 29).

2

Plaintiff's request for additional time to obtain new counsel — directing that any new counsel enter an appearance by April 15, 2016 — and invited the parties to submit any briefing in this matter by June 15, 2016. Id. at 4-5. Defendant filed a motion for summary judgment. No attorney has appeared on behalf of Plaintiff, and Plaintiff filed neither a motion for summary judgment nor a response to Defendant's motion. The case was subsequently reassigned to the undersigned, and is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court "may look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013).

"Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner applies the following five-step sequential disability analysis: (i) whether the

3

claimant performed substantial gainful activity during the disability period; (ii) whether the claimant has a severe medically determinable impairment; (iii) whether the claimant has an impairment that meets or equals a listed impairment; (iv) whether the claimant, in light of her residual functional capacity ("RFC") can return to her past relevant work; and (v) if not, whether the claimant, in light of her RFC and her age, education, and work experience, can make an adjustment to other work. See 20 C.F.R. § 416.920(a) (explaining the five-step sequential evaluation process). Plaintiff has the burden of proof for the first four steps, but, at step five, the burden shifts to the Commissioner to show that "notwithstanding the claimant's impairment, she retains the residual functional capacity to perform specific jobs existing in the national economy." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).

### III. ANALYSIS

On remand, the ALJ held a hearing, at which Plaintiff both testified and was represented by counsel. At the hearing, Plaintiff testified to unspecified pain in her back and left shoulder. Administrative Record ("A.R.") at 430-431 (Dkt. 22). She explained that she had trouble lifting with her left arm, but also stated that she was right-handed. Id. at 431-432. Plaintiff testified that it would take her all day to complete simple chores, and that she could only sit comfortably for about 15-20 minutes, stand for 10 minutes, and could not walk long. Id. at 433-434.[2] She also complained of difficulty sleeping, experiencing anxiety when in a crowd, and memory problems (although she stated she would be able to summarize a newspaper article and recall a set number of items from a grocery list). Id. at 434-435.

In a written decision following the hearing, the ALJ found that Plaintiff suffered severe impairments of degenerative disk disease, a previous torn rotator cuff, degenerative joint disease,

---

[2] In his decision, the ALJ noted that in her previous hearing before the prior ALJ, Plaintiff had also complained of neck pain/stiffness and numbness and tingling in both hands. A.R. at 415.

and bipolar disorder. Id. at 414. Despite these impairments, the ALJ concluded that Plaintiff retained the RFC to perform light work, except that Plaintiff could do no overhead reaching and was limited to just occasional pushing, pulling, lifting, and carrying with her upper left extremity. Id. at 418. The ALJ further restricted Plaintiff to unskilled work in light of her bipolar disorder. Id. The ALJ then determined that Plaintiff could not perform her prior occupation. Id. at 419, 438. At the hearing, the ALJ accurately conveyed the above-RFC in a hypothetical question to a Vocational Expert ("VE"), and inquired of the VE whether there were any other jobs in the national or regional economy that Plaintiff could perform. Id. at 437-438. The VE testified in the affirmative, citing examples of counter attendant (2,200 regional jobs), lobby attendant (1,200 regional jobs), and information clerk (1,800 regional jobs). Id. at 438. Relying on those examples, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the regional economy. Id. at 419-420.

    The ALJ's decision is supported by substantial evidence. As Defendant notes, it is Plaintiff's burden to provide sufficient medical and/or other evidence demonstrating disability. Def. Mot. at 15 (citing 20 C.F.R. § 404.1512(a), (c); id. § 404.1516). However, there is little objective evidence in the record documenting the extent of Plaintiff's impairments and the functional limitations associated with those impairments during the relevant time period. Accordingly, it was reasonable for the ALJ to rely on objective medical evidence predating Plaintiff's alleged onset of disability, and then conclude, based on subsequent medical records, that Plaintiff's condition did not appreciably deteriorate throughout the remainder of the period at issue. See A.R. at 415, 418. The ALJ supported this conclusion with medical evidence postdating the relevant disability period, which indicated that Plaintiff was not experiencing

5

significant functional limitations associated with the impairments that she claimed rendered her disabled during that period. Id. at 415-416, 418.

Moreover, the record evidence supports the ALJ's determinations. For instance, in May 2006, Plaintiff underwent electrodiagnostic testing ("EMG") in her upper left extremity, and there was "no evidence of focal nerve entrapment, peripheral neuropathy or radiculopathy." Id. at 747. And shortly before the alleged onset, a June 1, 2007 MRI of Plaintiff's left shoulder demonstrated just mild degenerative changes of the joint without mass effect on the muscle; Plaintiff's range of motion was decreased but there was no rotator cuff tear. Id. at 189. At a subsequent medical appointment on June 8, 2007, Plaintiff complained of pain in her shoulder, and Dr. Nadeem Siddiqui, M.D., who had treated Plaintiff on several occasions in the past, recommended work restrictions of "no frequent lifting, pushing or pulling with the left hand." Id. at 200. Dr. Siddiqui noted that the pain was "of uncertain etiology." Id. at 201. Thereafter, Plaintiff was evaluated for physical therapy on June 20, 2007, complaining of acute left shoulder pain that occasionally radiated down her left arm and hand, which was exacerbated by use of her arm. Id. at 289. A physical examination noted moderate-to-severe tenderness and muscle spasms, as well as pain upon movement. Id. at 289-290. The same examination also noted that Plaintiff's balance and endurance was "good" and her gait was "normal." Id. Plaintiff's rehabilitation potential for decreasing pain and improving her range of motion and muscle strength was considered "good." Id. at 290. Over the course of physical therapy, Plaintiff's pain and muscle strength appeared to improve. See id. at 283-289. On September 4, 2007, Plaintiff underwent an MRI of her cervical spine, which revealed just mild loss in disk height across multiple levels, resulting in mild cord compression, and a herniated disk that resulted in no cord compression. Id. at 375-376.

Plaintiff's remaining medical records for the relevant period consist mostly of handwritten notes that are largely illegible. E.g., id. at 292-296, 795-830. From these records, the Court discerns consistent, but general and subjective, reports of back and shoulder pain. On a far less frequent basis, the records note a restricted range of motion, and report, without elaboration, that Plaintiff was unable to walk or bend. Beyond this, however, there are no discernable objective medical findings.[3] Other records suggest that Plaintiff treated her pain with medication, some of which may have been helpful. See id. at 361 (appearing to reference a prescription for Vicodin); id. at 629 (appears to state Tylenol # 3 is helping). Yet other records do not make any reference to shoulder or back pain, or any functional limitations resulting from that pain. See id. at 642 (range of motion within normal limits); id. at 644 (same); id. at 646 (same); id. at 648 (same).

The evidence of record does not support reports of debilitating shoulder or arm pain, such that Plaintiff would be precluded from all work. And although the record does support some measure of functional limitation, the ALJ properly accounted for those limitations by restricting Plaintiff from reaching overhead, and limiting Plaintiff to the occasional use of her left arm and shoulder. These restrictions are consistent with those imposed by the physician Plaintiff saw just prior to the alleged onset of disability, and no other physician has imposed or recommended additional or more extensive work restrictions. In fact, several months after the relevant period, Dr. Neil Friedman, M.D., performed a medical examination in connection with Plaintiff's subsequent, successful application for benefits. See id. at 745-751. Dr. Friedman stated that

---

[3] At one point, a record indicated that Plaintiff needed surgery; however, it is unclear whether surgery ever actually took place or if any other type of treatment was pursued. See A.R. at 356. Plaintiff testified that she underwent surgery, id. at 432, but the Court is unaware of medical records documenting that procedure. Shoulder surgery to remove a tumor is briefly mentioned in a section detailing Plaintiff's past surgical history in a separate emergency department medical record, but there is no additional information provided. See id. at 583.

7

"[d]espite poor effort, [Plaintiff] does demonstrate essentially full range of motion throughout the other major joints of the upper extremities." Id. at 746; see also id. at 750. He further opined that "[t]he clinical examination [did] not reveal any other evidence of functional impairment or disability (other than that limited to the left foot/ankle) which would require imposition of any additional restrictions." Id. at 747. The results of this later examination suggest that Plaintiff's documented — and presumably unchanged — impairments (the degenerative joint disease and the degenerative disk disease) were not as severe during the relevant time period as Plaintiff's subjective complaints of pain would suggest. Thus, the physical component of the ALJ's RFC is supported by substantial evidence.

In addition to Plaintiff's physical impairments, the ALJ also found that Plaintiff had a severe impairment of bipolar disorder, and restricted Plaintiff to unskilled work accordingly. Id. at 414, 418. This restriction, too, is supported by the record. A February 2009 intake assessment for mental health services indicates that Plaintiff had mild-to-moderate difficulties in her ability to concentrate; however, her behavior, orientation, and intellect all were normal. Id. at 389. Plaintiff reported difficulties sleeping and symptoms of depression, id., but there was no evidence that these symptoms were so severe as to be work preclusive. Notably, Plaintiff completed treatment and was discharged from those services in October 2010. Id. at 675. A psychological evaluation completed by Dr. Matthew Dickson, Ph.D., in connection with Plaintiff's subsequent disability application, several months after the relevant disability period, did not reveal any significant cognitive impairment that would have precluded Plaintiff from engaging in gainful employment activity during the relevant period. See id. at 739-741.

Because the ALJ's decision is supported by substantial evidence in the record, the Court will not disturb it.

8

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Dkt. 31) is granted.

SO ORDERED.

Dated:  August 10, 2016  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2016.

s/Karri Sandusky
Case Manager